# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| | CHAPTER 13 |
| PAUL EMANUEL SANGER, JR. and MARCENE LYNNE SANGER, | |
| | CASE NO. 1:22-bk-01785-HWV |
| Debtors, | |
| | |
| PAUL EMANUEL SANGER, JR., MARCENE LYNNE SANGER, and JACK N. ZAHAROPOULOS, Chapter 13 Trustee, | ADVERSARY NO. 1:22-ap-00051-HWV |
| Plaintiffs, | |
| v. | Nature of Proceeding: 12 Recovery of money/property – 547 preference; 13 Recovery of money/property – 548 fraudulent transfer |
| JMG PARTNERS 2021, LP, | |
| Defendant. | |

## MEMORANDUM OPINION

This matter comes before the Court by way of a Motion for Summary Judgment filed by Defendant JMG Partners 2021, LP ("JMG") in which it seeks a determination that the Plaintiffs, Paul Emanuel Sanger, Jr., Marcene Lynne Sanger (the "Sangers"), and the Chapter 13 Trustee (collectively, "Plaintiffs"), are not able to avoid or otherwise set aside the sale of their property at an upset tax sale at which JMG was the successful bidder. For the reasons that follow, the motion for summary judgment will be granted.

**I. JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(F) and (H) (proceedings to avoid preferences and fraudulent conveyances).

1

## II. Factual Background and Procedural History[1]

The Sangers were the owners of real property located at 125 Hamlin Road, Fredericksburg, Pennsylvania. (Doc. 20, ¶ 1.) During their residency in this property the Sangers became delinquent in their property taxes[2] and an upset tax sale was scheduled for September 13, 2021 pursuant to Pennsylvania's Real Estate Tax Sale Law (the "RETSL").[3] (*Id.* ¶ 3.) JMG was the successful bidder at this sale and timely paid the bid amount of $42,500 to the Lebanon County Tax Claim Bureau in accordance with section 606 of the RETSL. (*Id.* ¶¶ 3–4.) Consistent with their rights under section 607 of the RETSL, the Sangers objected to the sale on October 8, 2021, and the Court of Common Pleas of Lebanon County held a hearing on the objection on January 24, 2022. (*Id.* ¶¶ 6–7.) The Sangers' objection was overruled by opinion and order on April 11, 2022, and the Sangers did not file an appeal of this decision. (*Id.* ¶¶ 8–9.) On June 30, 2022, the deed to the property was recorded by JMG in the Recorder of Deeds for Lebanon County, consistent with section 608 of the RETSL, and the Tax Claim Bureau distributed the proceeds from the upset tax sale on the same date.[4] (*Id.* ¶¶ 10–11.)

On September 19, 2022, the Sangers filed the instant Chapter 13 bankruptcy petition. Thereafter, on October 10, 2022, the Sangers filed an adversary complaint, in which the Chapter 13 Trustee joined, seeking a determination that the upset tax sale should be set aside either as a

---

[1] In considering JMG's Motion for Summary Judgment, the Court relies on the statement of material facts as provided by JMG, Doc. 20, since these facts were not objected to by the Plaintiffs. Where facts are disputed, the Court views the facts in the light most favorable to the Plaintiffs in accordance with the summary judgment standard. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). However, the Court notes that the facts in this case do not appear to be in dispute.

[2] The approximate amount of the delinquency was $6,734.14. (Doc. 20, ¶ 5.)

[3] 72 Pa. Stat. Ann. § 5860.101.

[4] As part of this distribution, the Lebanon County Tax Claim Bureau received $9,037.80, the Lebanon County Recorder of Deeds received $2,525.19, and the Sangers received $30,937.01. (Doc. 20, ¶ 11.)

2

Case 1:22-ap-00051-HWV    Doc 31    Filed 08/01/23    Entered 08/01/23 13:37:06    Desc
Main Document    Page 2 of 13

preference or a constructive fraudulent transfer and that the deed to the property should be returned to the Sangers.[5]  (Doc. 1.)  On March 28, 2023, JMG filed the instant motion for summary judgment.  (Doc. 19.)  Following briefing from the parties, the Court scheduled oral argument for May 23, 2023.  (Docs. 26, 27, 28, 30.)  After review of the relevant pleadings and the parties' arguments during the hearing, the Court is prepared to rule.

**III. ANALYSIS**

In this case, JMG asserts that the tax sale cannot be avoided as a preference because JMG is not a creditor of the Sangers.  (Doc. 26, pp. 4–11.)[6]  JMG also argues that the tax sale cannot be avoided as a constructive fraudulent transfer because JMG paid a reasonably equivalent value for the property at the tax sale.  (*Id.* at 11–14.)  Accordingly, JMG posits that the property should not be recoverable by the Sangers, and that its claims against the bankruptcy estate, to the extent that they exist, should not be disallowed.  (*Id.* at 14.)  The Plaintiffs dispute these assertions. (*See* Doc. 27.)  To the extent necessary, the Court considers these arguments in turn.

**A.  Summary Judgment Standard**

Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56, governing summary judgment motions, is applicable to adversary proceedings such as the instant matter before the Court.  Federal Rule of Civil Procedure 56 provides that a court, on motion, "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant and material if it could affect the outcome of the case."  *Thomas v. Tice*, 943 F.3d

---

[5] The Sangers continue to reside in the property.  (Doc. 20, ¶ 2.)

[6] For ease of reference, and where appropriate, the Court utilizes the page numbers from the CM/ECF footer.

145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)). Thus, summary judgment is appropriate where the moving party establishes that the non-movant has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### B. The Upset Tax Sale Cannot be Avoided as a Preferential Transfer.

Avoidance of preferential transfers is guided by Section 547(b) of the Bankruptcy Code, which provides that the "transfer of an interest of the debtor in property" may be avoided by the trustee[7] if it "(1) was made to or for the benefit of a creditor, (2) was made for an antecedent debt, (3) was made while the debtor was insolvent, (4) was made on or within 90 days before filing for bankruptcy, and (5) enabled the creditor to receive more than it would have received in a Chapter 7 liquidation proceeding." *Hackler v. Arianna Holdings Co., LLC* (*In re Hackler*), 938 F.3d 473, 477 (3d Cir. 2019). While JMG hinges its preferential transfer argument on its assertion that it is not a creditor of the Sangers, the Court views the dispositive issue in this case as more preliminary: whether the Sangers had an interest in the property at the time they filed

---

[7] In this case, the Chapter 13 Trustee has joined the Sangers' adversary complaint as a plaintiff. Therefore, the Court does not have concerns regarding the Sangers' standing to bring this action. Moreover, the Court notes that JMG has not challenged the Sangers' standing in this case.

their Chapter 13 petition. For the reasons set forth below, the Court finds that they did not; therefore, the question of whether JMG is a creditor of the Sangers is irrelevant.

### 1. The Transfer and Recordation of the Deed Did Not Transfer an Interest of the Debtors in Property.

The Court begins its analysis with the threshold requirement of Section 547(b): whether the transfer and recordation of the deed on June 30, 2022 was a transfer of "an interest of the debtor in property" for purposes of Section 547(b).[8] Although the Bankruptcy Code does not define the phrase "interest of the debtor in the property," the United States Supreme Court has held that the phrase "property of the debtor" as used in Section 547(b) is "coextensive with 'interests of the debtor in property' as that term is used in 11 U.S.C. § 541(a)(1)." *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990). "For guidance, then, we must turn to § 541, which delineates the scope of 'property of the estate' and serves as the postpetition analog to § 547(b)'s 'property of the debtor.'" *Id*. at 58–59. Section 541(a)(1) provides "that the 'property of the estate' includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Id.* at 59 (quoting 11 U.S.C. § 541(a)(1)); *see also Slobodian v. United States IRS* (*In re Net Pay Sols., Inc.*), 822 F.3d 144, 154 (3d Cir. 2016) ("[P]roperty of the debtor subject to [Section 547(b)] is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." (internal quotation marks

---

[8] The parties identify differing "transfers" for purposes of Section 547(b). Plaintiffs appear to assume that the transfer that should guide the Court's analysis is the delivery and recordation of the deed on June 30, 2022. In contrast, JMG appears to classify the transfer date as September 13, 2021—the date of the upset tax sale. However, neither party elaborates as to why their perceived transfer event should be controlling for the Court's analysis under Section 547(b). Viewing the facts in the light most favorable to the non-moving party, the Court will conduct its Section 547(b) analysis based on the delivery and recordation of the deed on June 30, 2022. This is the only transfer that falls within the 90-day preference period and is therefore the only "transfer" in this case that the Court may review in the context of Section 547(b). Indeed, the deed was recorded on June 30, 2022, and the instant bankruptcy case was initiated by the Sangers on September 19, 2022—a date within 90 days of June 30, 2022.

omitted)). Thus, the Court must determine whether the Sangers had a legal or equitable interest in the property as of the commencement of this case.

The Sangers' interest in the property, to the extent it exists, is "created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979); *see also In re Brannon*, 476 F.3d 170, 176 (3d Cir. 2007) ("[W]e generally turn to state law for the determination of property rights in the assets of a bankrupt's estate." (internal quotation marks omitted)). Hence, the Court turns to Pennsylvania law to determine the extent of the Sangers' interest in the property. In this case, the RETSL largely defines the Sangers' interests since the upset tax sale of the property was conducted under the RETSL. The RETSL provides that a tax claim bureau "become[s] trustee of a property at the moment it concludes the upset sale, that is, when the property is struck down, and legal title to the tax delinquent property passes to the tax claim bureau, as trustee[.]" *Com. v. Sprock*, 795 A.2d 1100, 1103 (Pa. Commw. Ct. 2002). This "is the most appropriate time for that to happen because the owner's right of redemption at that time is extinguished." *Id.* The subject property is then "turned over to the Tax Claim Bureau" and "all rights and title vest[] in the Bureau, as trustee." *Id*. at n.9 (citing *Bernitsky v. County of Schuylkill*, 112 A.2d 120, 122 (Pa. 1955) and *Petition of County Commissioners of Fayette County*, 126 A.2d 737, 739 (Pa. 1956)). Pennsylvania law also provides that when property is sold at a properly conducted upset tax sale, the purchaser becomes the equitable or beneficial owner through the doctrine of equitable conversion. *Nguyen v. Delaware Cnty. Tax Claim Bureau*, 244 A.3d 96, 102–103 (Pa. Commw. Ct. 2020) (citing *DiDonato v. Reliance Standard Life Ins. Co*., 249 A.2d 327, 329 (Pa. 1969)).[9]

---

[9] The Pennsylvania Supreme Court has explained that the "principles applicable to the sales of real property between private parties are equally applicable to sales for delinquent taxes. . . . . Thus, the doctrine of equitable conversion is applicable to a sale for delinquent taxes and its operation conveys equitable title to the purchaser." *Pivirotto v. City of Pittsburgh*, 528 A.2d 125, 127–28 (Pa. 1987).

In this case, as explained in more detail below, the upset tax sale conducted by the Lebanon County Tax Claim Bureau on September 13, 2021 was held in compliance with the RETSL. As a result, the Lebanon County Tax Claim Bureau became the trustee of the property, JMG became the equitable or beneficial owner, and the Sangers were left with neither an equitable nor a legal interest in the property following the sale. Indeed, at least as of May 11, 2022, the Sangers lacked any right to redeem the property. *See* 72 PA. CONS. STAT. § 5860.501(c) ("There shall be no redemption of any property after the actual sale thereof."); 72 PA. CONS. STAT. § 5860.607(g) (stating that the absolute confirmation of an upset tax sale forecloses the period of redemption after such sale); *Sprock*, 795 A.2d at 1102 ("After the upset sale, the owner of the property is prohibited from redeeming it."). Therefore, the Court concludes that the Sangers did not hold an interest in the property transferred by deed on June 30, 2022 sufficient to support a preference action under Section 547.

Because the Court finds that the transfer and recordation of the deed did not transfer an interest of the Sangers in the property sufficient to support a preference action under Section 547, JMG is entitled to summary judgment on these grounds. However, even assuming that the Sangers could show such an interest, they still cannot establish that the transfer of the deed to JMG on June 30, 2022 enabled JMG to receive more than it would have received in a Chapter 7 liquidation proceeding as required by Section 547(b)(5).

### 2. JMG did not Receive More Than it Would in a Chapter 7 Liquidation.

As stated by the Western District of Pennsylvania, "Section 547(b)(5) essentially requires the bankruptcy court to 'undo' the transfers in question and then construct a hypothetical liquidation of the debtor as of the petition date to determine whether the defendant-creditor received more as a result of the transfers than it would have received in a Chapter 7 liquidation

case." *Rocco v. J.P. Morgan Chase Bank*, No. 05-0366, 2006 U.S. Dist. LEXIS 12850, at *17 (W.D. Pa. Mar. 24, 2006) (quoting *Union Meeting Partners v. Lincoln Nat'l Life Ins. Co.* (*In re Union Meeting Partners*), 163 B.R. 229, 236–37 (Bankr. E.D. Pa. 1994)) (internal quotation marks omitted). For Chapter 7 trustees, "where property is of inconsequential [or no] value to the estate, abandonment under § 554, rather than sale under § 363, is the proper course." *Rambo v. Chase Manhattan Mortgage Corp.* (*In re Rambo*), 297 B.R. 418, 433 (Bankr. E.D. Pa. 2003) (citing *In re Feinstein Family Partnership*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000) ("It is almost universally recognized that where the estate has no equity in a property, abandonment is virtually always appropriate because no unsecured creditor could benefit from the administration."). "Indeed the Chapter 7 trustee is specifically instructed by the United States Trustee to sell only those secured assets that will generate funds for the benefit of unsecured creditors." *In re Rambo*, 297 B.R. at 433 (citing U.S. Department of Justice Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8–20 (2002)).

Given the facts of this case, the Court concludes that a Chapter 7 trustee would not seek to administer the property as an asset since a sale of the deed would confer no benefit on creditors of the estate. This is because the Sangers did not have any rights in the property as of the commencement of the case, aside from their continued possession of same. JMG was the legal and equitable owner of the premises and all that remained once the appeal window expired on May 11, 2022, was to transfer and record the deed to the property. Instead, a Chapter 7 trustee would likely abandon the property. JMG would then be free to exercise its state law rights relative to the property, including recordation of the deed. Consequently, in a hypothetical Chapter 7 liquidation, JMG would likely receive exactly what it did in this case: the deed to the property, which it could then record. Therefore, the Court finds that JMG received no more than

it would have received in a hypothetical Chapter 7 liquidation. Because JMG did not receive *more* than it would have in a Chapter 7 liquidation, the Court finds that the deed transfer cannot be set aside as a preference, and JMG is entitled to summary judgment on these additional grounds.

### C. The Upset Tax Sale Cannot be Avoided as a Constructively Fraudulent Transfer.

Section 548 of the Bankruptcy Code allows a trustee to avoid any transfer of an interest of the debtor made within 2 years before the date of the filing of the petition if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation; and was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation."[10] 11 U.S.C. § 548(a)(1)(B). At issue in this case is whether JMG's bid and ultimate payment of $42,500 constituted reasonably equivalent value for the Sangers' property in light of the appraisal obtained by the Sangers' counsel indicating that the property is worth $120,000.[11] (*See* Doc. 1-3.)

The Supreme Court has evaluated the phrase "reasonably equivalent value" in the context of mortgage foreclosure sales and has declined to interpret the phrase "'reasonably equivalent value' in § 548(a)(2) to mean either 'fair market value' or 'fair foreclosure price.'" *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994). Rather, the Court held that "a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so

---

[10] In contrast to the Court's preference analysis, the Court identifies the "transfer" at issue in the Section 548 context as the upset tax sale of the Sangers' property to JMG since this transfer falls within the 2-year lookback period of the statute and is the source of the dispute in this case. However, consistent with the Court's preference analysis, the Court finds that the Chapter 13 Trustee's joinder in the Sangers' adversary complaint as a plaintiff resolves the Court's standing concerns. Moreover, the Court notes that JMG has not challenged the Sangers' standing in this case.

[11] As emphasized by the Third Circuit, the Court's consideration of "reasonably equivalent value" in the Section 548(a)(2) constructive fraudulent transfer context is distinct from its consideration of value in the Section 547(b)(5) preferential transfer context. *See In re Hackler*, 938 F.3d at 479–80.

9

long as all the requirements of the State's foreclosure laws have been complied with." *Id.* The Court further held that "mere inadequacy of the foreclosure sale price is no basis for setting aside the sale, though it may be set aside (under state foreclosure law, rather than fraudulent transfer law) if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" *Id.* at 542 (citation omitted). The Supreme Court emphasized that its decision "cover[ed] only mortgage foreclosures of real estate," and explicitly noted that "[t]he considerations bearing upon other foreclosures and forced sales," including tax sales, might be different. *Id.* at 537 n.3. However, "federal courts have since extended the reasoning of the [*BFP*] case to tax sales where the applicable state tax sale law provides procedural protections similar to those provided by the state's foreclosure laws, including that the sale be conducted publicly with competitive bidding." *Crespo v. Immanuel (In re Crespo)*, 569 B.R. 624, 630–31 (E.D. Pa. 2017) (collecting cases).

While the Third Circuit has not expressly ruled on whether a tax sale foreclosure can constitute a fraudulent transfer under Section 548, *Kopec v. Tower DBW REO VI, LLC (In re Kopec)*, 621 B.R. 621, 625 (Bankr. D.N.J. 2020), many courts within the Third Circuit have held that "the reasoning of BFP extends to upset tax sales conducted in accordance with the Pennsylvania Tax Sale Law based on the similarities between the procedural protections applicable to upset tax sales and those applicable to mortgage foreclosure sales in Pennsylvania." *In re Crespo*, 569 B.R. at 631 (citing *Golden v. Mercer Cty. Tax Claim Bureau (In re Golden)*, 190 B.R. 52, 58 (W.D. Pa. 1995); *Lord v. Neumann (In re Lord)*, 179 B.R. 429, 436 (Bankr. E.D. Pa. 1995); cf. *Hemstreet v. Brostmeyer (In re Hemstreet)*, 258 B.R. 134, 138–39 (Bankr. W.D. Pa. 2001)). Indeed, courts have explained that:

> the protections, rights and remedies afforded a delinquent taxpayer under the [Pennsylvania Tax Sale Law] are no less than those afforded a mortgagor under

> Pennsylvania's mortgage foreclosure law. Indeed taxpayers receive more and earlier notices prior to the tax sale than mortgagors, and a longer guaranteed period of time within which to cure the default. Each statutory scheme contemplates competitive bidding pursuant to prescribed bidding procedures which are conducted by a government official and neither provides for a period of redemption once the sale is held. The [Tax Sale Law] affords the taxpayer the three key protections offered by foreclosure laws: notice, ample opportunity to cure, and strict adherence to statutory requirements.

*In re Lord*, 179 B.R. at 435–36 (footnote omitted).

"As numerous courts have recognized, in Pennsylvania, an upset tax sale is conducted as an auction 'at which bidding occurs, and at which the properties are struck down to the highest bidder.'" *In re Crespo*, 569 B.R. at 632 (quoting *In re Upset Sale of Sept. 8, 1980*, 495 A.2d 221, 222 (Pa. Commw. Ct. 1985) (citation omitted) and citing *Golden*, 190 B.R. at 57). Moreover, "[u]pset tax sales are advertised to the public—both by posting of the property to be sold and by publication—so as to 'increase[] the number of bidders for the property' and to ensure 'that the property is sold for the highest amount possible.'" *In re Crespo*, 569 B.R. at 632 (quoting *In re Upset Price Tax Sale of Sept. 10, 1990*, 606 A.2d 1255, 1258 (Pa. Commw. Ct. 1992) and citing *In re Golden*, 190 B.R. at 57). No property may be sold at an upset tax sale "unless a bid equal to the upset price is made." 72 PA. STAT. § 5860.605. As a result, "Pennsylvania law 'presumes that the price received at a duly advertised public [upset tax] sale is the highest and best obtainable,' *Roeting v. Lancaster Cty.*, 401 A.2d 580, 581 (Pa. Commw. Ct. 1979), and precludes courts from setting aside an upset tax sale 'solely on the ground of the inadequacy of price[.]'" *In re Crespo*, 569 B.R. at 633 (quoting *Povlow v. Brown*, 315 A.2d 375, 377 (Pa. Commw. Ct. 1974)).

In this case, the Sangers' property was sold at an upset tax sale conducted under Pennsylvania law. The Court of Common Pleas of Lebanon County determined that this sale was conducted in accordance with Pennsylvania law and overruled the Sangers' objections. (*See*

11

Doc. 20, ¶ 8; Doc. 26-1.) Specifically, the Court of Common Pleas of Lebanon County found that:

> The testimony adduced at the hearing established that the Tax Claim Bureau was in full compliance with the requirements of Section 5860.601(a)(3). Belinda Spicer, Deputy Director of the Tax Claim Bureau, explained that there is a two-year process before a property will be subject to a tax sale. She testified that if the real estate taxes on a property are unpaid in one tax year, the matter will get turned over to her office in January. At that time, she will send a certified letter reminding the owners of the unpaid taxes. If the taxes are not paid, the owners will receive notice of a tax sale the following year. Notice of the sale will be posted on the property and personal service will be made on the owners. The property will then be advertised for sale.
>
> Spicer confirmed that this process was followed prior to the sale of this property. On March 9, 2020, [t]he Tax Claim Bureau mailed a Notice of the delinquent taxes to the Sangers by certified mail. The return receipt for the Notice indicated that it was delivered by the United States Postal Service and signed for by Paul Sanger on March 11, 2020. When the taxes remained unpaid, a Notice of Public Tax Sale was sent via certified mail to the Sangers indicating that the property would be listed for tax sale on September 13, 2021 and advising them to contact the Tax Claim Bureau in order to prevent the sale. The return receipt from the Postal Service indicated that Paul Sanger signed for the Notice on May 20, 2021. The Notice of the sale was posted on the property on July 28, 2021 and personal service of the Notice of sale was made by the Lebanon County Sheriff on Paul Sanger on July 30, 2021. The Sangers were served with the Second Notice of Public Sale dated August 11, 2021. The sale was advertised in the Lebanon Daily News, and Lebanon County Legal Journal, and the Merchandiser in August of 2021. The property was then sold to Intervenor John Pack at the tax sale on September 13, 2021. The Tax Claim Bureau produced a sixty-year title search of the property which revealed the Sangers to be the recorded title owners. Spicer confirmed that all the standard procedures were followed and that the Tax Claim Bureau fully complied with the Pennsylvania Real Estate Tax Claim Law.

(Doc. 26-1, pp. 5–6 (citations omitted).)

The Sangers did not appeal this decision, nor have they challenged the sale here outside of the constructive fraudulent transfer context. There is no evidence to indicate that the sale of the Sangers' property was conducted improperly, and, as Pennsylvania courts have explained, courts will not set aside an upset tax sale "solely on the ground of the inadequacy of price[.]" *Povlow*, 315 A.2d at 377.

Therefore, the Court finds as a matter of law that the Sangers did not receive less than a reasonably equivalent value in exchange for the sale of their property to JMG, and that JMG is entitled to summary judgment on these grounds. Since the remainder of the parties' arguments regarding redemption of the property and JMG's claims in this case hinged upon whether the tax upset sale could be set aside, and because the Court has found that the sale cannot be set aside on either preference or constructive fraudulent transfer grounds, the Court also finds that summary judgment is appropriate with respect to the remainder of JMG's motion.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant JMG's Motion for Summary Judgment. An appropriate Order will follow.

By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: August 1, 2023